**BRIDGEPORT MUSIC, INC.,**
**Plaintiff–Appellant,**

**Westbound Records, Inc.,**
**et al., Plaintiffs,**

v.

**WB MUSIC CORP., et al., Defendants,**

**Universal–Polygram International Publishing, Inc., Defendant–Appellee.**

**No. 06–5420.**

United States Court of Appeals, Sixth Circuit.

Argued: Jan. 29, 2008.

Decided and Filed: March 25, 2008.

**ARGUED:** Richard S. Busch, King & Ballow, Nashville, TN, for Appellant. Russell J. Frackman, Mitchell, Silberberg & Knupp, Los Angeles, CA, for Appellee. **ON BRIEF:** Richard S. Busch, King & Ballow, Nashville, TN, for Appellant. Russell J. Frackman, Marc E. Mayer, Mitchell, Silberberg & Knupp, Los Angeles, CA, Philip M. Kirkpatrick, Stewart,

Estes & Donnell, Nashville, TN, for Appellee.

Before: GUY, GILMAN, and McKEAGUE, Circuit Judges.

McKEAGUE, Circuit Judge.

Plaintiff–Appellant Bridgeport Music, Inc. ("Bridgeport") appeals from the district court's order awarding attorneys' fees and costs to Defendant–Appellee Universal–Polygram International Publishing, Inc. ("UPIP") as a prevailing party under 17 U.S.C. § 505. This court had vacated an earlier award of fees and costs to UPIP and remanded to the district court for further consideration. *Bridgeport Music, Inc. v. Rhyme Syndicate Music,* 376 F.3d 615 (6th Cir.2004). On remand, the district court awarded the same amount of fees and costs to UPIP. Bridgeport argues that the district court abused its discretion. For the reasons set forth below, we affirm.

## I[1]

This is one of a large number of cases brought by Bridgeport and three sister companies (collectively referred to as "Bridgeport") against various defendants in the music-publishing industry. In the original complaint, Bridgeport alleged nearly 500 counts against approximately 800 defendants for copyright infringement and other state-law claims arising from music sampling. The amended complaint in this case, filed after the district court severed the original case into 476 separate actions, was based on the allegation that the rap song "99 Problems" sampled the opening three-note chord from the musical composition "Get Off Your Ass and Jam" ("Get Off"), which was written and record-ed by George Clinton, Jr. and the Funkadelics in the mid–1970s. Bridgeport asserts that it owns the composition "Get Off."

Tracy Marrow (p/k/a Ice–T) co-wrote and performed the song "99 Problems" for release on the album "Home Invasion." Priority Records released the album on March 23, 1993. More than a year later, UPIP obtained an interest in the composition through its predecessor, PolyGram International Publishing, Inc., by assignment from Marrow. On January 7, 1998, Bridgeport notified UPIP, Warner/Chappell Music (which was listed on the copyright registration as a claimant to "99 Problems") and others of its sampling claim and demanded that Bridgeport be granted a 33.33% ownership interest in the musical composition. UPIP did not respond, but Warner/Chappell Music denied that any samples were used on the "Home Invasion" album.

More than three years later, Bridgeport commenced this action against UPIP, Warner/Chappell Music and other defendants. The district court referred the case to a magistrate judge. Defendants Warner/Chappell Music and WB Music (the "Warner defendants") moved for summary judgment on several grounds. The magistrate judge concluded that summary judgment should be granted. He determined that the infringement claims against the Warner defendants were barred both by a release as part of a settlement of prior litigation and by the applicable three-year statute of limitation. Although the Warner defendants had issued a license for the release of "99 Problems" in 1993, the only acts by the Warner defendants within the limitations period were the receipt of royalties on the sale of the album. Recogniz-

---

1. Following is a synopsis of the factual and procedural background of this case and related litigation. A more extensive background can be found at *Rhyme Syndicate,* 376 F.3d at 618–20, 627.

ing that there was no case law on the question, the magistrate judge concluded that the receipt of income from the sale of infringing products within the limitations period by a party who does not manufacture, distribute, or sell the infringing product (but who did provide a license) would not constitute direct or contributory infringement.

UPIP had also moved for summary judgment, arguing, inter alia, that Bridgeport's claims were barred, or alternatively, limited by the statute of limitation. While the motion was pending, UPIP wrote to Bridgeport:

> We have reviewed your Rule 72 Objections to Judge Brown's R & R to Judge Higgins. Judge Brown's R & R was thoughtfully analyzed and well-reasoned, and we fully anticipate that Judge Higgins will adopt it as the order of the Court. We understand you have also indicated you intend to appeal this issue to the Sixth Circuit. With that in mind, we propose and request that Bridgeport stipulate to judgment in favor of Universal Polygram International Publishing, Inc. ("UPIP") in Case 706 based upon Judge Brown's R & R. This would preserve the parties' and the Court's resources and avoid unnecessary expenditures of time, effort, and expense because the cases against both Warner–Chappell and UPIP would proceed simultaneously.

Bridgeport did not respond.

Over Bridgeport's objections, the district court adopted the magistrate judge's report and recommendation and granted summary judgment to the Warner defendants on September 16, 2002. UPIP then obtained leave to supplement its motion for summary judgment. Bridgeport responded in opposition on October 4, 2002. The district court granted summary judgment to UPIP on November 7, 2002, find-ing that Bridgeport failed to demonstrate direct, contributory, or vicarious infringement by UPIP within the limitations period.

In a post-judgment motion, UPIP moved for an award of $297,292.60 in attorneys' fees and $16,119.22 in nontaxable costs as a prevailing party under 17 U.S.C. § 505. The district court determined that Bridgeport had pursued an objectively reasonable legal theory that the receipt of royalties alone constituted an infringing act; however, the theory became unreasonable once the district court granted summary judgment on the identical issue to the Warner defendants. Because Bridgeport pursued its claim even though its legal theory had purportedly become objectively unreasonable, the district court awarded UPIP $79,340.94 in attorney fees and $3,409.35 in costs, which represented fees and costs incurred by UPIP after September 16, 2002.

On appeal, this court vacated the award. The court faulted the district court for its inconsistency regarding the reasonableness of Bridgeport's legal theory: "The district court explicitly found that Bridgeport's receipt of royalties theory was objectively reasonable. This objectively reasonable theory did not suddenly become objectively unreasonable (factually and legally) once it became apparent that the district court would most likely reject it and enter summary judgment in UPIP's favor." *Rhyme Syndicate*, 376 F.3d at 628. The court concluded that it was an abuse of discretion to award fees and costs based on an erroneous determination that the theory had become unreasonable. *Id.* The court remanded the case for the district court to consider in its discretion whether an award or partial award was warranted based on a weighing of one or more relevant factors or because an award

would otherwise further the purposes of the Copyright Act. *Id.* at 628–29.

On remand, the magistrate judge recommended that a partial award of attorneys' fees and costs continued to be warranted. *Bridgeport Music, Inc. v. Universal–Polygram Int'l Publ'g, Inc.,* No. 3:01–0706, R & R at 7 (M.D.Tenn. Oct. 20, 2005) (the "R & R"). He recommended that the district court award the same amount of fees and costs. *Id.* Over the parties' objections, the district court adopted the report and recommendation.[2]

Bridgeport timely appealed.

## II

### A. Attorneys' Fees and Costs under the Copyright Act

■ We review the district court's decision to award attorneys' fees and costs to UPIP for abuse of discretion. *Rhyme Syndicate,* 376 F.3d at 625–26. There is an abuse of discretion "if the district court relied on erroneous findings of fact, applied the wrong legal standard, misapplied the correct legal standard when reaching a conclusion, or made a clear error of judgment." *Nafziger v. McDermott Int'l, Inc.,* 467 F.3d 514, 522 (6th Cir.2006) (brackets and internal quotation marks omitted), *cert. denied,* —— U.S. ——, 127 S.Ct. 2886, 167 L.Ed.2d 1153 (2007).

■ The Copyright Act provides that in civil suits the district court, in its discretion, may award costs, including reasonable attorneys' fees, to the prevailing party. 17 U.S.C. § 505. This discretion must be exercised in an evenhanded manner with respect to prevailing plaintiffs and prevailing defendants, and in a manner consistent with the primary purposes of the Copyright Act. *Fogerty v. Fantasy,* *Inc.,* 510 U.S. 517, 534, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The grant of fees and costs "is the rule rather than the exception and [they] should be awarded routinely." *Positive Black Talk Inc. v. Cash Money Records, Inc.,* 394 F.3d 357, 380 (5th Cir. 2004); *see also Thoroughbred Software Int'l, Inc. v. Dice Corp.,* 488 F.3d 352, 362 (6th Cir.2007) (same).

Rejecting both a "dual standard" under which a prevailing defendant is required to show frivolousness or bad faith and the "British Rule" of automatic recovery of attorneys' fees and costs by the prevailing party, the *Fogerty* Court explained: "There is no precise rule or formula for making these determinations, but instead equitable discretion should be exercised in light of the considerations we have identified." 510 U.S. at 534, 114 S.Ct. 1023 (internal quotation marks and citation omitted). The Court approved several nonexclusive factors to weigh when considering a request for fees and costs, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 534 n. 19, 114 S.Ct. 1023 (internal quotation marks and citation omitted). The factors need not all weigh in favor of an award in order to grant fees to a prevailing party and other factors may be considered. *Bridgeport Music, Inc. v. Diamond Time, Ltd.,* 371 F.3d 883, 894 (6th Cir.2004).

### B. Weighing the Factors

■ On remand, the district court reiterated that Bridgeport's royalty-receipt theory was objectively reasonable: "The novelty of Bridgeport's theory and the contentiousness of *both* sides throughout this

---

**2.** Because the district court adopted in full the magistrate judge's report and recommendation, the report is referred to herein as the district court's opinion.

litigation continue to weigh against a full award of fees and costs to UPIP...." R & R at 6 (emphasis in original). Other factors, however, weighed in favor of a partial award of fees and costs to UPIP:

> [T]he fact remains that, while not objectively unreasonable as a matter of law, Bridgeport's pursuance of its claims against UPIP after September 16, 2002, without any new facts to offer which might cast doubt upon the outcome, was patently futile and thus factually (if not legally) frivolous, especially in light of the lack of evidence noted by the Sixth Circuit. The undersigned concludes that these particular circumstances present the need "to advance considerations of compensation and deterrence" in favor of UPIP.... [T]he undersigned deems Bridgeport's pressing of a futile claim to be one more example of the overly aggressive litigation tactics which underscored the Court's prior, vacated award of fees. Indeed, it seems that in forcing the additional, fruitless expenditure of efforts and fees associated with trial preparation, Bridgeport's motive must certainly have been retribution, and/or an effort to extract settlement dollars without any basis for doing so.

*Id.* at 6–7.

 This case presents one of the rare instances in which a district court orders a party to pay attorneys' fees and costs in spite of finding that the party advanced an objectively reasonable legal claim or theory. As this court explained in *Rhyme Syndicate*, "[I]t generally does not promote the purposes of the Copyright Act to award attorney fees to a prevailing defendant when the plaintiff has advanced a reasonable, yet unsuccessful claim." 376 F.3d at 628 (citing *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir.2001); *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir.1998)).

Yet, other than being a prevailing party under the Copyright Act, there is no single factor that must weigh in favor of an award of fees and costs—i.e., no factor is a necessary condition. *Diamond Time*, 371 F.3d at 894 ("The district court in this case correctly observed that because the Fogerty factors are nonexclusive, not every factor must weigh in favor of the prevailing party and other factors may be considered as well."). The court recognized this when it remanded the case in spite of the district court's earlier finding that Bridgeport's theory was objectively reasonable. Thus, the question boils down to the following: despite the objective reasonableness of Bridgeport's royalty-receipt theory, are there other factors that are sufficiently weighty to justify the award against Bridgeport?

The district court specifically pointed to Bridgeport's "pressing of a futile claim" as another part of the pattern of the company's "overly aggressive litigation tactics" which the district court had identified in its earlier opinion. R & R at 7. Other parts of this pattern include: filing a single complaint over 900 pages long with hundreds of separate claims and defendants; engaging in discovery abuses; abusing the summary judgment process by submitting massive statements of disputed facts which included legal conclusions and immaterial and argumentative assertions; and engaging in sharp pre-trial practices. This court has approved prior awards of fees and costs against Bridgeport in companion cases for similar reasons. *See Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 809 (6th Cir.2005) (affirming award based on deterrence and compensation); *Diamond Time*, 371 F.3d at 896 (affirming award based in part on improper motivation of Bridgeport and deterrence); *cf. Bridgeport Music, Inc. v. Sony Music Entm't, Inc.*, 114 Fed.Appx. 645, 651–53 (6th Cir.2004) (unpublished) (explaining

that deterrence is a "particularly relevant factor to be considered" but that it was an abuse of discretion to base the award solely on Bridgeport's voluminous pleadings and conduct of counsel).

As the district court reiterated on remand, Bridgeport's theory had some support in law and in fact—it was objectively reasonable. The district court's negative evaluation of the theory in the case against the Warner defendants did not somehow dissolve the theory's legal and factual merits with regard to UPIP. That is, in essence, what the court held in *Rhyme Syndicate*.

█ Recognizing that the royalty-receipt theory was, is, and will remain objectively reasonable regardless of the ultimate outcome, however, does not mean that Bridgeport's continued reliance on the theory in this instance was necessarily nonsanctionable. Objective reasonableness is not an impenetrable shield against fees and costs. As the district court noted, once it had rejected the theory under similar factual circumstances in a companion case,[3] it was fruitless in a practical sense for Bridgeport to pursue that same theory before the same judge and thereby force UPIP to incur expenses preparing for trial. As it has in several companion cases, Bridgeport failed to weed out those claims and theories for which it "had little hope of recovering" from the claims and theories that arguably have merit. *Dimension Films*, 410 F.3d at 809 ("The district

court's criticisms go beyond just [the length and number of claims], however, and are tied to conduct that complicated rather than streamlined the issues and contributed to the multiplication of fees for the defendant.").

To be clear, Bridgeport did not act irresponsibly by pursuing the royalty-receipt theory against UPIP at the outset or on appeal. It was and remains an objectively reasonable theory. Yet, it made little practical sense for Bridgeport to continue to pursue vigorously its claim before the district court when it was on notice that the judge was virtually certain to reject its sole theory of recovery.

Bridgeport points out that it had the right to pursue its legal remedies to conclusion. Correct enough, but it could have done so by agreeing to UPIP's suggestion that the parties stipulate to dismissal of the claim on the same basis as the one against the Warner defendants. The cases could then have both been appealed and consolidated for review by this court.

Viewed in isolation, Bridgeport's continued pursuit of the claim before the district court—while futile given the judge's rejection of the royalty-receipt theory—might not alone have warranted an award of fees and costs. As this court explained in *Rhyme Syndicate*, it would be improper to "sanction a party simply for electing to await decision on a pending motion." 376 F.3d at 628. Yet, when viewed as part of the larger landscape of Bridgeport's litiga-

---

**3.** Bridgeport argues on appeal that there were significant factual differences between its case against the Warner defendants and its case against UPIP. As Bridgeport admits, however, "the district court found that Bridgeport had not offered *any* evidence, beyond the receipt of royalties, of infringing acts occurring within the limitations period." Bridgeport's Reply Br. at 14 (emphasis added). Moreover, this court earlier found "a complete absence of proof connecting UPIP

either to the distribution and sale of the album or to the performance of the allegedly infringing work within the limitations period." *Rhyme Syndicate*, 376 F.3d at 622. While Bridgeport's factual allegations against UPIP may have differed somewhat from those against the Warner defendants, it has not shown that the evidence it offered in opposition to summary judgment against both companies differed in any material way.

tion strategy, an award was justified. "The unique posture of this case as one of hundreds brought in the same manner and asserting parallel claims, makes deterrence a particularly relevant and appropriate consideration." *Dimension Films,* 410 F.3d at 809. The district court's interest in motivating Bridgeport to sort through its claims applies with equal force to claims that become futile during the course of litigation as it does to claims that are objectively unreasonable at the outset. *Cf. id.* ("It is not the deterrence of objectively reasonable good faith claims, but the interest in motivating plaintiffs to sort through the objectively unreasonable ones and prosecute this at best cumbersome litigation in a way that discriminates between parties and claims."); *Diamond Time,* 371 F.3d at 895 ("While the district court certainly did not mince words, the harsh criticism of the plaintiffs' litigation strategy was clearly focused on the resulting failure of plaintiffs to weed out stale claims against defendants like Diamond Time.").

Bridgeport contends that the district court is simply doing in deed what this court held it could not do in word, namely award fees and costs because the theory had become objectively unreasonable. But as the defendants did in another companion case, *Bridgeport Music, Inc. v. London Music, U.K.,* Bridgeport "conflate[s] the *Fogerty* factors with the facts pertinent to

an analysis of each of those factors." 226 Fed.Appx. 491, 496–97 (6th Cir.2007) (unpublished). Here, the same fact—the district court's rejection of the identical theory in a companion case—was considered by the district court under more than one factor. Although the district court previously erred by concluding, based on this fact, that the theory was objectively unreasonable, it did not err by concluding, based on this same fact, that it was futile for Bridgeport to pursue the factually similar claim under the same theory before the same judge and thereby force UPIP to incur fees and costs to prepare for trial. *See id.* ("There is no law, of course, that prohibits a judge from considering the same fact under multiple categories."). Nor did the district court err by concluding that Bridgeport continued to press the theory as part of its overly aggressive litigation tactics and not in any hope or expectation of actually surviving summary judgment. Given the litigation history of Bridgeport in this and the companion cases, it was not an abuse of discretion for the district court to award fees and costs against the company in the hope of motivating it to litigate in a more responsible, realistic manner and to deter it from continuing to engage in questionable litigation tactics.[4]

## C. The Amount of the Award

■ The district court's decision to award fees and costs is "bolstered" by its

---

4. Bridgeport raises two additional arguments. It contends that the district court failed to consider the parties' relative ability to pay. Yet, as in prior cases, Bridgeport failed to present any reliable evidence to support its argument. *Sony Music,* 114 Fed.Appx. at 652–53 (explaining that a district court can consider the parties' relative abilities to pay attorneys' fees and costs, but that Bridgeport had failed to present any evidence on this point beyond its owner's conclusory affidavit). Bridgeport also argues that UPIP was required to assert below that Bridgeport was

collaterally estopped by the decision in the companion case. There are at least two problems with this argument. First, Bridgeport raised it for the first time in its reply brief and therefore has waived the argument. *Renkel v. United States,* 456 F.3d 640, 642 n. 1 (6th Cir.2006). Second, the district court did not find that Bridgeport was legally estopped from pursuing its royalty-receipt theory against UPIP, only that it was futile to do so as a matter of litigation strategy and common sense.

significant reduction of the requested amount. *Coles v. Wonder*, 283 F.3d 798, 804 (6th Cir.2002). As it did earlier, the district court considered only fees and costs incurred after September 16, 2002. The district court also reduced the rates of counsel and paralegal work, deducted fees for redacted or nonspecific entries, allocated fees between two cases against UPIP, and reduced the lodestar amount by an additional 25% to account for top-heavy billing by partners for work that could have been performed by associates. *Rhyme Syndicate*, 376 F.3d at 627.

Bridgeport argues that the district court abused its discretion in awarding fees and costs for work that did not contribute to UPIP's success in this matter. The district court's award encompassed work by UPIP's legal team on the supplemental summary judgment brief as well as trial preparation and other expenses incurred after September 16, 2002.

Contrary to Bridgeport's contention, the district court was not limited to awarding fees and costs only for the specific matter that was successful. Rather, the award must simply be reasonable. *Diamond Time*, 371 F.3d at 896–97. As the trial date approached, it was reasonable for UPIP to prepare for trial even though the district court had not yet issued its ruling on summary judgment. By continuing to rely on the royalty-receipt theory after the judge had rejected it in a companion case, Bridgeport had to bear the risk that the district court would hold it responsible for the cost of UPIP's trial preparation. As the expenses were related to UPIP's litigation defense and were limited in scope and time, the district court did not abuse its discretion by including in its award expenses beyond those associated only with the supplemental summary-judgment brief.

## III

For the reasons set forth above, we find no abuse of discretion in the district court's award of attorneys' fees and costs. Accordingly, we AFFIRM.